```
 1  BENJAMIN B. WAGNER
    United States Attorney
 2  JASON HITT
    Assistant U.S. Attorney
 3  501 I Street, Suite 10-100
    Sacramento, California 95814
 4  Telephone: (916) 554-2751
```



FILED
JUL 23 2012
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 2:11-cr-0077 WBS |
| Plaintiff, ) | PLEA AGREEMENT FOR DEFENDANT JASPREET DHADDA |
| v. ) | |
| JASPREET DHADDA, JAIME MAROTTE, and CHRISTOPHER TABOR, ) | |
| Defendants. ) | |

**I.**

**INTRODUCTION**

**A. Scope of Agreement:** Pursuant to Rules 11(c)(1)(A), (B) of the Federal Rules of Criminal Procedure, defendant Jaspreet DHADDA ("defendant") will plead guilty to Counts One and Five of the Indictment in this case. Count One charges the defendant with conspiracy to distribute and possess with intent to distribute MDMA, a Schedule I Controlled Substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1). Count Five charges the defendant with possession with intent to distribute MDMA in violation of 21 U.S.C. § 841(a)(1). This document contains the complete Plea Agreement between the United States Attorney's Office for the Eastern District

of California (the "government") and the defendant regarding this case. This Plea Agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

**B. Court Not a Party:** The Court is not a party to this Plea Agreement. Sentencing is a matter solely within the discretion of the Court, the Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this Plea Agreement. If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this Plea Agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II.

### DEFENDANT'S OBLIGATIONS

**A. Guilty Pleas:** The defendant will plead guilty to Counts One and Five of the Indictment in this case. Count One charges the defendant with conspiracy to distribute and possess with intent to distribute MDMA, a Schedule I Controlled Substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1). Count Five charges the defendant with possession with intent to distribute MDMA in violation of 21 U.S.C. § 841(a)(1). The defendant agrees that he is in fact guilty of these charges and that the facts set forth in the Factual Basis

attached to this Plea Agreement as <u>Exhibit A</u> are accurate, true, and correct.

**B. Fine:** The parties agree that the defendant does not have the ability to pay a fine and, therefore, imposition of a fine should be waived. U.S.S.G. § 5E1.2(a).

**C. Special Assessment:** The defendant agrees to pay a special assessment of $200 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this Plea Agreement is voidable by the government if he fails to pay the assessment prior to that hearing. If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

### III.

### THE GOVERNMENT'S OBLIGATIONS

**A. Dismissals:** The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining Counts in the pending Indictment in Case No. 2:11-cr-0077 WBS. The government also agrees not to reinstate any dismissed count except as provided in Part VII.B. of this Plea Agreement.

**B. Recommendations:**

**1. Incarceration Range:** The government will recommend that the defendant be sentenced to the low end of the applicable guideline range for his offense (including the application of the mandatory statutory minimum term) as determined by the United States Probation Office.

**2. Acceptance of Responsibility:** If the United States Probation Office determines that a three-level reduction in defendant's Offense Level for his full and clear demonstration of acceptance of responsibility is appropriate under U.S.S.G. § 3E1.1, the government will not oppose such a reduction and will so move under § 3E1.1(b), so long as the defendant pleads guilty, meets with and assists the Probation Officer in the preparation of the pre-sentence report, is truthful and candid with the Probation Officer, and does not otherwise engage in conduct that constitutes obstruction of justice within the meaning of U.S.S.G. § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

## IV.

### ELEMENTS OF THE OFFENSE

**A. Elements of the Offenses:** At a trial, the government would have to prove beyond a reasonable doubt the following elements of the following offenses to which the defendant is pleading guilty:

<u>COUNT ONE</u> - <u>Conspiracy to Distribute and Possess with Intent to Distribute MDMA in violation of 21 U.S.C. §§ 846 and 841(a)(1)</u>

First, beginning no later than on or about March 12, 2009, and continuing through February 3, 2011, there was an agreement between the defendant and Christopher TABOR, Jaime MAROTTE, or others to distribute and possess with intent to distribute 3,4 methylenedioxymethamphetamine ("MDMA"), a Schedule I Controlled Substance; and

Second, the defendant became a member of the conspiracy knowing that one of its objects was to distribute and possess with intent to distribute MDMA and the defendant intended to help accomplish such

1 | distribution and possession with intent to distribute.

2 | COUNT FIVE    -    <u>Possession with Intent to Distribute MDMA in violation of 21 U.S.C. § 841(a)(1)</u>:

First, on or about February 2, 2011, the defendant knowingly possessed MDMA; and

Second, the defendant possessed the MDMA with the intent to deliver it to another person.

A person has possession of something if the person knows of its presence and has physical control of it, or knows of its presence and has the power and intention to control it.
9th Cir. Crim. Jury Inst. 3.17 (2010).

**V.**

**MAXIMUM SENTENCE**

**A.    Maximum Penalties on Counts One and Five:** The maximum sentence which the Court can impose on each of Counts One and Five of the Indictment is up to 20 years in prison, a period of supervised release of at least 3 years up to life, a fine of up to $1,000,000, and a special assessment of $100. In addition, the defendant may be ineligible for certain federal and/or state assistance and/or benefits, pursuant to 21 U.S.C. § 862.

**B.    Violations of Supervised Release:** The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to 3 additional years in prison.

/ / /

/ / /

/ / /

5

## VI.

## SENTENCING DETERMINATION

**A. Statutory Authority:** The defendant understands that the Court must consult the Federal Sentencing Guidelines (as promulgated by the Sentencing Commission pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as modified by <u>United States v. Booker</u> and <u>United States v. Fanfan</u>, 543 U.S. 220 (2005)) and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

**B. Stipulations Affecting Guidelines Calculation:** The government and the defendant agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate to the following:

    **1. Acceptance of Responsibility:** See paragraph III.B.2 above.

    **2. Departures or Other Enhancements or Reductions:** The parties stipulate and agree that they will not seek or argue in

support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references.  Both parties stipulate and agree not to move for, or argue in support of, any departure from the Sentencing Guidelines, or any deviance or variance from the Sentencing Guidelines under United States v. Booker, 543 U.S. 220 (2005), except that defendant may argue for a sentence of no less than 70 months in prison based upon a departure or variance from the applicable guideline range for post-offense rehabilitation and appropriate factors under 18 U.S.C. § 3553(a).  The government reserves the right to oppose any such argument.

## VII.

## WAIVERS

A. **Waiver of Constitutional Rights:** The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on his behalf; (e) to confront and cross-examine witnesses against him; and (f) not to be compelled to incriminate himself.

B. **Waiver of Appeal, Collateral Attack, and Other Important Rights:** The defendant understands that the law gives him a right to appeal his conviction and sentence.  He agrees as part of his plea, however, to give up the right to appeal the conviction and the right to appeal any aspect of the sentence imposed in this case so long as his sentence is no longer than the top of the Sentencing Guidelines range determined by the Court.  He specifically gives up his right to

appeal any order of restitution the Court may impose.

Regardless of the sentence he receives, the defendant also gives up any right he may have to bring a post-appeal attack on his conviction or his sentence. He specifically agrees not to file a motion under 28 U.S.C. § 2255 or § 2241 attacking his conviction or sentence.

The defendant agrees to waive any and all rights he may have to later move for a reduction of his sentence under 18 U.S.C. § 3582. This waiver is valid and enforceable even if the U.S. Sentencing Commission subsequently lowers the applicable guideline for his offense under U.S.S.G. § 2D1.1.

Notwithstanding the agreement in part III.A. above that the government will move to dismiss counts against the defendant, if the defendant ever attempts to vacate his plea, dismiss the underlying charges, or reduce or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the right (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this Plea Agreement; and (3) to file any new charges that would otherwise be barred by this Plea Agreement. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office. By signing this Plea Agreement, the defendant agrees to waive any objections, motions, and defenses he might have to the government's decision. In particular, he agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

**C. Waiver of Attorneys' Fees and Costs:** The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this Plea Agreement and any charges previously dismissed).

## VIII.
## ENTIRE PLEA AGREEMENT

Other than this Plea Agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

**THIS SPACE LEFT BLANK.**

## IX.

## APPROVALS AND SIGNATURES

   A.   **Defense Counsel:** I have read this Plea Agreement and have discussed it fully with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this Plea Agreement.

DATED: 7/23/12

PETER KMETO, Esq.
Attorney for Defendant

   B.   **Defendant:** I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. In addition, no one has threatened or forced me in any way to enter into this Plea Agreement. Finally, I am satisfied with the representation of my attorney in this case.

DATED: 7/23/12

JASPREET DHADDA
Defendant

   C.   **Attorney for United States:** I accept and agree to this Plea Agreement on behalf of the government.

BENJAMIN B. WAGNER
United States Attorney

DATED: July 23, 2012         By: _____
                                 JASON HITT
                                 Assistant U.S. Attorney

## EXHIBIT A
## Factual Basis for Plea

At trial, the government would prove beyond a reasonable doubt the following facts as to Count Two of the Indictment:

**COUNT ONE - Overall MDMA Conspiracy Evidence**
Beginning in March of 2009, a DEA undercover agent ("UC") began purchasing MDMA from **co-defendant Christopher TABOR**. During each of the controlled purchases, TABOR's MDMA supplier, **Jaspreet DHADDA**, was spotted by surveillance at times and locations consistent with being TABOR's supplier on those deals. DHADDA's supplier relationship to TABOR was corroborated by examination of multiple drug-related text messages between TABOR and DHADDA. DEA obtained the text messages through a series of federal search warrants.

**COUNT FIVE - February 2, 2011 - MDMA Buy/Bust of 5,000 MDMA Pills**
During and in furtherance of the conspiracy, on February 2, 2011, the UC received information from TABOR that TABOR would bring 5,000 MDMA pills and sell them to the UC for approximately $15,000. Prior to the buy/bust, agents established surveillance on the 6300 block of Folsom Blvd in Sacramento. Agents had already obtained federal arrest warrants for DHADDA and TABOR.

As the drug deal took place, surveillance observed DHADDA driving to the parking lot of a bar at 1630 S Street in Sacramento. DHADDA parked his vehicle on the southwest corner of Hanger 17 and walked into Hanger 17. A short time later, DHADDA and **co-defendant Jaime MAROTTE** walked out of the restaurant toward DHADDA's vehicle. Surveillance observed DHADDA and MAROTTE get into DHADDA's vehicle and drive away.

Surveillance then observed MAROTTE (without DHADDA) arrive at the parking lot of Hoppy Brewing Company on Folsom Boulevard in Sacramento. MAROTTE pulled into the rear of the parking lot and backed into a parking space. A short time later, surveillance observed TABOR arrive in a vehicle and walk over to meet with MAROTTE.

At this time, agents executed the federal arrest warrant for TABOR and attempted to detain MAROTTE. After a struggle with MAROTTE, agents disabled his vehicle. MAROTTE then spontaneously told a DEA Special Agent, "I know they are in the trunk." MAROTTE's green Honda was searched by agents. They located a green knapsack containing approximate 5,000 MDMA pills.

| | |
|---|---|
| 1 | **EXHIBIT A** |
| 2 | **Factual Basis Continued** |

**Jaime MAROTTE - Miranda Statement**

Agents read MAROTTE his Miranda warnings and he agreed to make a statement. According to MAROTTE, he met **Jaspreet DHADDA** earlier in the day at the restaurant to pick up approximately 5,000 MDMA pills. DHADDA gave MAROTTE the MDMA pills inside a paper bag. MAROTTE then transported them to his home, placed the 5,000 MDMA tablets inside of a green knapsack, and placed the knapsack inside the trunk of his green Honda. MAROTTE then received a call from TABOR drove his vehicle directly to the parking lot of 6300 Folsom Boulevard, where he was supposed to meet with **Christopher TABOR**. MAROTTE said TABOR was going to sell the 5,000 MDMA pills that day to a customer (the UC) for $15,000. MAROTTE said he planned to make $1,000 on the sale today and TABOR was going to make $4,000.

As part of this plea agreement, the defendant admits that he agreed with Jaime MAROTTE and Christopher TABOR to distribute the 5,000 MDMA pills in Sacramento on February 2, 2011.

I have reviewed the entire factual basis in Exhibit A above and, as far as my own conduct is concerned, I adopt it as my own true statement.

DATED: 7/27/12

JASPREET DHADDA
Defendant